**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**OTTO DENTAL SUPPLY, INC.**                                          **PLAINTIFF**

**V.**                                       **4:06CV01610-WRW**

**KERR CORPORATION**                                          **DEFENDANT**

**ORDER**

Pending is Plaintiff's Motion for Partial Summary Judgment as to the Existence of a

Franchise (Doc. No. 16), to which Defendant has responded (Doc. No. 29).  Also pending is

Defendant's Motion for Summary Judgment (Doc. No. 19), to which Plaintiff has responded

(Doc. No. 32).  Finally, Defendant's Motions to Strike First Affidavit (Doc. No. 27) and Motion

to Strike Second Affidavit are pending (Doc. No. 44), to which Plaintiff has responded (Doc.

Nos. 54, 56 respectively).

Plaintiff requests an order ruling that an oral agreement between the parties created a

franchise agreement, and, therefore, Plaintiff is protected under the Arkansas Franchise Practices

Act ("AFPA").  Defendant argues that it is not liable, since no franchise relationship existed

between the parties, and also requests summary judgment.  Defendant asks that Plaintiff's

affidavits used to support Plaintiff's Motion for Summary Judgment and Plaintiff's Response to

Defendant's Motion from Summary Judgment be stricken, or, at least, not considered while

ruling on the present motions.

## I. Background

Approximately twenty-five years ago, Defendant Kerr Corporation ("Kerr") commenced

a business relationship with Plaintiff Otto Dental Supply, Inc. ("Otto") to purchase and resell

Kerr products.[1]

Kerr develops, manufactures, and markets dental products throughout the United States

and Canada.  Kerr does not sell its products directly to customers, however, and relies on

approximately 50 authorized dealers, like Otto, to distribute its products to customers.[2]

Otto, as an authorized dealer, used Kerr's trademarks and trade names to market and sell

Kerr's products.[3]  Although Otto did not advertise Kerr's products on its premises, Kerr's

products were available for purchase from Otto's store in Conway, Arkansas.[4]  Otto contends,

however, that most of the products were ordered and sold over the phone.[5]  This business

relationship continued until it was terminated by Kerr in August 2005.

The relationship was terminated when Ron Mallerstein, the Vice President of Kerr, sent a

letter requiring distributors, like Otto, to purchase at least $50,000 of Kerr products a year.[6]  Otto

---

[1]Doc. No. 17

[2]Kerr referred to Otto as an "authorized dealer" and "dealer partner" in letters sent to Otto.

[3]Doc. No. 1.

[4]Doc. No. 21.

[5]Doc. No. 17.

[6]Doc. No. 1.

purchased, on average, $16,477.[7]  When Otto was unable to purchase the required amount, Kerr

terminated its relationship with Otto in August 2005.[8]

Otto believes that the purchasing requirement was not the actual basis for termination.

Otto contends it was terminated because it was selling Kerr's products in the "gray market,"

which Kerr disapproved.  The gray market refers to goods that are sold outside normal

distribution channels.  A gray market transaction occurs when an authorized dealer sells products

to an unauthorized dealer; the unauthorized dealer will then resell the items to the final

purchaser.[9]  Otto was selling Kerr's products to BestBuy Dental, an unauthorized dealer, at cost.

BestBuy Dental resold the products to whomever it wanted, and at whatever price it wanted.

Otto argues that Kerr was trying to prevent these transactions and, as a result, punished Otto by

terminating its status as an authorized dealer.

Otto filed this suit claiming that the business relationship between Otto and Kerr created

a franchise, and thus, Otto is protected by the AFPA.  This Act provides remedies for persons

whose rights as franchisees have been terminated without cause and provides procedural

requirements for termination.  Otto alleges that Kerr violated the AFPA when Kerr dissolved the

business relationship without proper notice and did not allow Otto to cure deficiencies before

termination.  Otto also claims that the termination was not based on good cause, and Kerr did not

deal with Otto in a commercially reasonable manner or in good faith.

---

[7]Doc. No. 20.

[8]Doc. No. 1.

[9]Doc. No. 33, Exhibit 2.

Kerr denies that a franchise relationship existed between the parties; and, therefore, Otto

is not protected by the AFPA and cannot recover damages.  Alternatively, Kerr contends that, if

there was a franchise, it has satisfied all the requirements of termination under the AFPA and is

not liable.  Finally, Kerr argues that Statute of Frauds bars any claims by Otto.

## II. Standard

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided on purely legal grounds.[10]  The Supreme Court has established

guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the
> need for a trial -- whether, in other words, there are any genuine factual issues that
> properly can be resolved only by a finder of fact because they may reasonably be
> resolved in favor of either party.[11]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme

remedy that should only be granted when the movant has established a right to the judgment

beyond controversy.[12]  Nevertheless, summary judgment promotes judicial economy by

preventing trial when no genuine issue of fact remains.[13]  I must view the facts in the light most

favorable to the party opposing the motion.[14]  The Eighth Circuit has also set out the burden of

the parties in connection with a summary judgment motion:

---

[10]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[11]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[12]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[13]*Id.* at 728.

[14]*Id.* at 727-28.

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*, "[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[15]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[16]

## III.  Discussion

### A.  Plaintiff's Motion for Summary Judgment as to the Existence of a Franchise

Plaintiff alleges that Defendant violated the AFPA.  Defendant contends that the AFPA is not applicable.  Whether the AFPA applies depends on the interpretation and construction of the applicable provisions of the statute.  The AFPA was designed to remedy abuses in the franchise relationship, and is liberally construed to carry out its legislative goal.[17]  The APFA reads:

> "Franchise" means a written or oral agreement for a definite or indefinite period in which a person grants to another a license to use a trade name, service mark, or related characteristic within an exclusive or nonexclusive territory or to sell or distribute goods or services within an exclusive or nonexclusive territory at wholesale or retail, by lease agreement, or otherwise.[18]

Plaintiff argues that it has met these requirements, and consequently, it is protected by the Act.

Plaintiff alleges that there was an oral agreement between the parties -- specifically,

---

[15]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[16]*Anderson*, 477 U.S. at 248.

[17]*Dr. Pepper Bottling Co. of Paragould v. Frantz*, 842 S.W.2d 37 (Ark. 1992).

[18]Ark. Code Ann. § 4-72-202(1)(a).

Plaintiff would market and sell Defendant's products, using Defendant's name and trademark, for an indefinite period of time.  Plaintiff sold Defendant's products from Plaintiff's business in Conway, Arkansas and would sell and ship Defendant's products throughout the "nonexclusive territory" of the United States.[19]  Thus, Plaintiff contends, it has satisfied the requirements for a franchise under Arkansas law.

Defendant argues that there was no franchise relationship between the parties, and that Plaintiff was merely a distributor who was permitted to purchase its products wholesale and then sell them at retail prices.  In other words, Defendant claims that there was no contract or agreement between the parties to sell it's products, i.e., Plaintiff simply purchased items from Defendant.[20]

Since Plaintiff asserts that the parties entered into an oral agreement to sell and market Defendant's products,[21] and Defendant argues that Plaintiff was merely a purchaser of catalogued items which Plaintiff resold however it wanted,[22] there are material facts in dispute making summary judgment as to the existence of a franchise inappropriate.

The Eighth Circuit has held that when there is a genuine factual dispute as to the existence of an alleged oral contract, summary judgment is improper.[23]  Although a contract is

---

[19]Plaintiff cannot recall any specific terms of the agreement however.

[20]Doc. No. 19.

[21]Doc. No. 1.

[22]Doc. No. 20.

[23]*Ozark Milling Co. v. Allied Mills, Inc.*, 480 F.2d 1014 (8th Cir. 1973).

not needed to create a franchise,[24] the existence of an agreement is a question of fact, not of

law.[25]   Therefore, Plaintiff's Motion for Summary Judgment as to the Existence of a Franchise is

DENIED.

**B.  Defendant's Motion for Summary Judgment For Lack of a Franchise**

Defendant contends that there was no franchise relationship because (1) there was no

contract or agreement and (2) there was no territorial limitation or geographical requirement.

Alternatively, Defendant argues that if there was a franchise, Defendant has satisfied all the

requirements for proper termination under the AFPA.  Finally, Defendant argues that the Statute

of Frauds bars any recovery.

Defendant's first argument, that a franchise did not exist because there was no agreement

between the parties, has been addressed above.

Defendant next argues that there was no franchise because there was no territorial

limitation or geographical requirement placed on Plaintiff.  The AFPA states that in order to

have a franchise, there must be "an exclusive or non-exclusive territory"[26] in which to sell or

distribute goods.  Defendant contends that there was no geographical limitation on Plaintiff and

no restriction placed on Plaintiff's sales.  Therefore, Defendant argues, there was no franchise

under Arkansas law.

---

[24]*S. Beach Bev. Co. v. Harris Brands, Inc.*, 138 S.W.3d 102 (Ark. 2003) (holding that the parties created a franchise relationship even though there was no signed contract).

[25]*Graffi v. Unisys*, No. 93-4077, 1944 U.S. App. LEXIS 33178 (10th Cir. November 29, 1993).

[26]Ark. Code Ann. § 4-72-202(1)(a).

Plaintiff argues that it has satisfied the territory requirement of the AFPA.  Plaintiff

contends that it's nonexclusive territory was the United States, since it was prohibited from

selling Defendant's products to foreign countries.[27]  Since the AFPA is liberally construed,[28] I

find that Plaintiff has satisfied this requirement.

Next, Defendant argues that it neither contemplated nor required Plaintiff to establish or

maintain a place of business in Arkansas.  The AFPA defines a place of business as "a fixed

geographical location at which the franchisee displays for sale and sells the franchisor's goods or

offers for sale and sells the franchisor's services."[29]  Plaintiff argues that Defendant

"contemplated" that it would maintain a place of business in Arkansas.  Plaintiff bases the

argument upon Defendant's knowledge of Plaintiff's store before the business relationship

began.  Defendant also is aware that Plaintiff has continued to maintain his store in Arkansas.

Therefore, Plaintiff argues, Defendant "contemplated" that Plaintiff would maintain a place of

business in Arkansas.

Arkansas courts have held that a franchise agreement can either explicitly or implicitly

require performance from a fixed physical location.[30]  In *Dr. Pepper Bottling Co. v. Frantz*, the

Arkansas Supreme Court held that even though the franchise agreement between the parties did

---

[27]Doc. No. 32, Exhibit 2.

[28]*Dr. Pepper* at 143.

[29]Ark. Code Ann. § 4-72-202(6).

[30]*Dr. Pepper Bottling Co. v. Frantz*, 842 S.W.2d 37 (Ark. 1992).

not require a fixed location, a franchise existed because the agreement did not prohibit one.[31]

Therefore, the court reasoned, the parties "contemplated" a fixed location.

Along this line, in a recent Arkansas Supreme Court case, *Mary Kay, Inc. v. Isbell*, the

Arkansas Supreme Court concluded that Isbell was not protected under the AFPA since the

agreement between Isbell and Mary Kay specifically prohibited establishing a place of business

to sell goods.  Therefore, Isbell could not be protected by the AFPA.[32]

In the present case, Defendant did not prohibit establishing a place of business.

Defendant arguably "contemplated" the establishment of a business in Arkansas since it was

aware of Plaintiff's store in Conway, Arkansas; therefore satisfying that requirement of the

AFPA.  Hence, Defendant's Motion for Summary Judgment for Lack of a Franchise is DENIED.

**C.  Defendant's Motion for Summary Judgment if a Franchise Existed**

Defendant argues that summary judgment is proper even if there was a franchise

relationship between the parties.  Defendant contends that it has satisfied all the requirements of

termination under the AFPA.  A violation of the AFPA occurs when a franchisor

> (1) terminates or cancels a franchise without good cause; or (2) fails to renew a
> franchise except for good cause or except in accordance with the current policies,
> practices, and standards established by the franchisor, which in their establishment,
> operation, or application are not arbitrary or capricious.[33]

Defendant claims that it has met these requirements.

Defendant argues that it had good cause to terminate the franchise because Plaintiff did

not meet Defendant's minimum purchasing requirement.  Under the AFPA, "good cause"

---

[31]*Id.*

[32]*Mary Kay, Inc. v. Isbell*, 986 S.W.2d 90 (Ark. 1999).

[33]Ark. Code Ann. § 4-72-204(a).

includes failure by a franchisee to comply substantially with the requirements imposed upon him

or her by the franchisor, or sought to be imposed by the franchisor.[34]  Plaintiff did not meet

Defendant's purchasing requirement since Plaintiff, on average, only purchased $16,477.  Thus,

Defendant could terminate the franchise with Plaintiff for "good cause."

However, Plaintiff argues that the relationship was not terminated because it did not meet

the purchasing requirement.  Plaintiff alleges that the franchise was dissolved because Plaintiff

was selling Defendant's products in the "gray market."[35]  As evidence, Plaintiff provided an e-

mail between Defendant's employees which reads, "Otto Dental was selling to BestBuy Dental

so I shut them down."[36]

Plaintiff also claims that Defendant agreed to continue the business relationship

irrespective of the purchasing requirement after Plaintiff protested.  Although it did not meet

Defendant's purchasing requirements, Plaintiff again produces an email from Defendant stating

that Plaintiff would be allowed to purchase products until the end of the year.[37]  Thus, Plaintiff

believed it was not required to purchase the required amount.  Plaintiff, however, was, according

to Defendant, subsequently terminated for not meeting the noted requirement.  Plaintiff did not

receive notice that the purchasing requirement had been reinstated.[38]  Hence, Plaintiff argues, it

did not received proper notice.

---

[34]Ark. Code Ann. § 4-72-202(7)(a).

[35]Doc. No. 33, Exhibit 2.

[36]Doc. No. 33, Exhibit 7.

[37]Doc. No. 32, Exhibit 7.

[38]An e-mail stated that Plaintiff "faxed in an order today so he is probably aware of it [his termination] now."

Defendant could terminate Plaintiff for "good cause" if Plaintiff did not meet the purchasing requirement or if Defendant prohibited gray market sales.  However, if these were grounds to terminate the franchise, Defendant must give Plaintiff proper notice and time to correct the deficiency under the statute.   The AFPA reads:

> No franchisor shall directly or indirectly terminate, cancel, or fail to renew a franchise without first giving notice to the franchisee at least ninety (90) days in advance of such action, setting forth the reasons for the termination, cancellation, or intention not to renew, and, in the case of terminations, shall provide the franchisee with thirty (30) days in which to rectify any claimed deficiency.[39]

Plaintiff argues that regardless of whether it was terminated because it was selling in the "gray market" or if the purchasing requirement was reinstated, Defendant did not give the required notice for termination or time to correct the deficiency.

Plaintiff also argues that Defendant did not deal with Plaintiff in a commercially reasonable manner or in good faith.  Whether a party treats another party in a commercially reasonable manner and in good faith is a fact question for the jury.[40]

Since it is unclear (1) whether the business relationship with Plaintiff was terminated because it did not meet the purchasing requirement, (2) whether it was terminated because it was selling products to another company at cost, or (3) whether Defendant treated Plaintiff in a commercially reasonable manner and in good faith, Defendant's Motion for Summary Judgment is DENIED.

### D.  Defendant's Statute of Frauds Argument

---

[39]Ark. Code Ann. § 4-72-204(b).

[40]*Miller Brewing Company v. Ed Roleson, Jr. Inc.*, 223 S.W.3d 806, 811 (Ark. 2006).

Defendant's last argument for summary judgment is that the statute of frauds bars

Plaintiff's recovery.  The Arkansas statute of frauds reads:

> (1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.  A writing is not sufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in writing.[41]

Defendant claims that since there was no written contract between the parties, the claims against

it are barred.

Plaintiff argues that the statute of frauds is inapplicable because the claims are brought

under the AFPA and not under a breach of contract claim, i.e., Plaintiff contends that the statute

of frauds does not apply to claims under the AFPA.  Finally, Plaintiff asserts that even if the

statute of frauds applies to franchises, there are certain facts in this case making it inapplicable.

Looking at the AFPA, it appears from its language that the statute of frauds does not

apply.  The AFPA states that a franchise is "a written or *oral* agreement for a definite or

*indefinite* period."[42]  Further, in *South Beach Beverage Co. Inc. v. Harris Brands, Inc.*, the

Arkansas Supreme Court held that an oral agreement between the parties created a franchise

agreement.[43]  Thus, the statute of frauds does not bar Plaintiff's recovery, and Defendant's

Motion for Summary Judgment is DENIED.

### E.  Defendant's Motion to Strike First and Second Affidavit

---

[41]Ark. Code Ann. § 4-2-201(1) (emphasis added).

[42]Ark. Code Ann. § 4-72-202(1).

[43]*S. Beach Bev. Co. v. Harris Brands, Inc.*, 138 S.W.3d 102 (Ark. 2003).

Defendant argues that Plaintiff's affidavits contradict its deposition testimony and should

be stricken or, alternatively, disregarded while ruling on the summary judgment motions.  The

Eighth Circuit has held that where a party attempts to overcome a motion of summary judgment

by submitting an affidavit that squarely contradicts the party's earlier deposition testimony, the

court may properly grant the motion for summary judgment despite the conflict.[44]  In other

words, if there are material facts in conflict between a party's deposition testimony and a party's

affidavit, the court can ignore the affidavit while ruling on summary judgment motions.

Defendant points to three inconsistencies in Plaintiff's first affidavit and its deposition

testimony: (1) the terms of the business relationship, (2) Plaintiff's advertisements of

Defendant's products, and (3) Plaintiff's sales of Defendant products at Plaintiff's store.[45]  In

Plaintiff's second affidavit, Defendant argues there is an inconsistency about a conversation with

Defendant's employee, Ron Mallerstein, and its deposition testimony.[46]

After examining the affidavits and the deposition testimony, I do not find the affidavit to

be inconsistent with Plaintiff's deposition testimony.  For example, Defendant states that

Plaintiff, at its deposition, could not recall any specific terms of the agreement between the

parties.  In its affidavit, Plaintiff wrote that the agreement was for an "indefinite period of time."

Defendant argues that this statement in Plaintiff's affidavit is inconsistent with Plaintiff's

testimony, and thus, Plaintiff's affidavit should be stricken or ignored.

---

[44]*Camfield Tires Inc. v. Michelin Tire Corp*, 719 F.2d 1361 (8th Cir. 1983).

[45]Doc. No. 28.

[46]Doc. No. 45.

13

However, there is nothing inconsistent with Plaintiff testifying that it could not recall the specific terms of the agreement, and then writing that the agreement was for an indefinite period of time.  If the Plaintiff could recall the specific terms of the agreement, then the agreement would not be for an indefinite period of time.

Further, Defendant argues that Plaintiff made inconsistent statements regarding Plaintiff's advertising of Defendant's products.  When asked about advertising at the deposition, Plaintiff testified, "We ran some ads in national magazines, but we've also, most of the time, we just produce our own price list."[47]  Plaintiff stated that price lists were sent to dentists with Defendant's logo and pictures of Defendant's products as well.  In Plaintiff's affidavit, it writes, "Otto Dental Supply advertised Kerr products in various forms and fashion over the years, but primarily through direct mail advertising sent to dentists,"[48] and that it "advertised using the Kerr trade names and related characteristics."[49]  Defendant argues that these statements are inconsistent because Plaintiff is "describing a broad advertising and marketing campaign of Kerr products."[50]

Plaintiff contends that there is nothing in its affidavit that significantly contradicts its deposition testimony.  I agree.

Finally, Defendant argues that Plaintiff's first affidavit was inconsistent with its testimony regarding the sale of Defendant's products at Plaintiff's store.  Defendant alleges that

---

[47]Doc. No. 28, Exhibit A.

[48]Doc. No. 32. Exhibit 2.

[49]*Id.*

[50]Doc. No. 28.

Defendant's products were not available to purchase in Plaintiff's store since most of Plaintiff's orders were completed over the phone.  However, in Plaintiff's affidavit, it wrote that it offered Defendant's products for sale from Plaintiff's business in Conway, Arkansas.

Plaintiff contends that Defendant's products were available to purchase at the store, but it was never asked if they were sold on site.  If Defendant had asked if its products were available for purchase, Plaintiff claims that it would have testified to that fact.  Since there is no deposition testimony regarding whether Defendant's products were available for purchase at Plaintiff's store, there are no inconsistencies that squarely contradict its affidavit.  Further, when Plaintiff was asked about a miscellaneous billing account at its deposition, Plaintiff testified that "they were used for customers who *comes in* and buys products from us."[51]  After examining the testimony and affidavits, I do find any inconsistencies.  Accordingly, Defendant's Motion to Strike the First Affidavit is DENIED.

Defendant argues that Plaintiff's second affidavit should also be stricken or ignored because of inconsistencies.  Defendant contends that Plaintiff's affidavit provides more information than Plaintiff's deposition testimony regarding a conversation with Defendant's employee.  When asked about a conversation between Defendant and Plaintiff, Plaintiff testified at its deposition that it was unhappy with the fact that it was going be discontinued as a dealer for Defendant, but it could not recall the specifics.[52]  In Plaintiff's affidavit, it wrote that it immediately called Defendant to inform him that it "did not believe that this $50,000 purchase

---

[51]Doc. No. 55, Exhibit 1 (emphasis added).

[52]Doc. No. 45.

requirement was fair"[53] since it "had no prior notice of it and no opportunity to meet this threshold requirement."[54]

At first glance, it appears that this is an inconsistent statement; however, Defendant ignores answers to follow up questions.  When asked about the conversation later, Plaintiff testified that the parties "kind of went over the same thing.  I thought this $50,000 figure that just came out of no where was a little unfair."[55]  Therefore, its affidavit is not inconsistent with its deposition, and Defendant's Motion to Strike the Second Affidavit is DENIED.

After examining the deposition testimony and affidavits, I do not find any inconsistencies which would require them to be stricken or ignored.

## IV.  Conclusion

In sum, there are material facts in dispute regarding: (1) whether there was an oral franchise agreement between the parties, (2) whether the franchise was terminated because Plaintiff did not meet the purchasing threshold or whether Plaintiff was terminated because it was selling items in the gray market so summary judgment is not appropriate, (3) whether Defendant treated Plaintiff in a commercially reasonable manner and in good faith.

Based on the finding and fact and conclusions of law above, Plaintiff's Motion for Partial Summary Judgment as to the Existence of a Franchise (Doc. No. 16) is DENIED.  Defendant's Motion for Summary Judgment (Doc. No. 19) is also DENIED.  Defendant's Motion to Strike Affidavits (Doc. Nos. 27 and 44) are DENIED.

---

[53]Doc. No. 45.

[54]*Id.*

[55]Doc. No. 57

IT IS SO ORDERED this 13th day of February, 2008.


                                        /s/Wm. R. Wilson, Jr.
                                UNITED STATES DISTRICT JUDGE